1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  CARL T. ROE,                                    No.  2:13-cv-02265 AC

12              Plaintiff,

13        v.                                         ORDER

14  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19  ("Commissioner") denying his application for period of disability and disability insurance

20  benefits ("DIB") under Title II of the Social Security Act and supplemental security income

21  ("SSI") under Title XVI of the Act.  Plaintiff's motion for summary judgment is pending.  The

22  Commissioner filed an opposition to plaintiff's motion for summary judgment.[1]  ECF No. 17.

23  For the reasons discussed below, plaintiff's motion for summary judgment is DENIED.

24  _____
    [1]  The Commissioner's brief is titled "Defendant's Opposition to Plaintiff's Motion for Summary
25  Judgment," and does not expressly move for summary judgment on plaintiff's claims.  See ECF
    No. 17; see also Scheduling Order ¶ 5 ("Defendant's opposition to a motion for summary
26  judgment and/or remand, if any, shall be filed within 30 days from service of plaintiff's
    motion."), ECF No. 5.  Notwithstanding the absence of any express cross-motion for summary
27  judgment by the Commissioner, the undersigned will construe the Commissioner's brief as
    including such a cross-motion in light of the fact that the Commissioner's brief requests only that
28  the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings if the court
    finds the ALJ erred in its decision.  ECF No. 17 at 9.

1                           PROCEDURAL BACKGROUND

2          Plaintiff filed his application for DIB on July 19, 2010, alleging disability beginning on

3   March 29, 2010.  Administrative Record ("AR") 121–24.  Plaintiff's application was denied

4   initially on January 13, 2011, AR 79–82, and again upon reconsideration on April 18, 2011, AR

5   84–88.  On March 9, 2012, a hearing was held before administrative law judge ("ALJ") L. Kalie

6   Fong.  AR 38–73.  Plaintiff appeared and testified at the hearing without an attorney or

7   representative.  Id.  A vocational expert named Joy Yoshioka attended the hearing but did not

8   testify.  Id.  In a decision dated April 17, 2012, the ALJ found plaintiff not disabled.  AR 23–33.

9          The ALJ made the following findings (some citations to 20 C.F.R. omitted):

10             1.   The claimant meets the insured status requirements of the Social
                    Security Act through December 31, 2014.
11

12             2.   The claimant has not engaged in substantial gainful activity
                    since March 29, 2010, the alleged onset date.
13

14             3.   The claimant has the following severe impairments:
                    degenerative disc disease of the cervical and lumbar spine,
                    Pellegrini-Stieda disease of the right knee, and gout.
15

16             4.   The claimant does not have an impairment or combination of
                    impairments that meets or medically equals the severity of one of
                    the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

17             5.   After careful consideration of the entire record, the undersigned
18                  finds that the claimant has the residual functional capacity to
                    perform medium work as defined in 20 CFR 404.1567(c) except
19                  frequent climbing ramps and stairs and occasional climbing ladders,
                    ropes and scaffolds; and frequent balancing and occasional
20                  stooping, kneeling, crouching and crawling; and avoid concentrated
                    exposure working at heights and moving machinery.

21             6.   The claimant is unable to perform any past relevant work.

22             7.   The claimant was born on August 15, 1965 and was 44 years
                    old, which is defined as a younger individual at 18–49, on the
23                  alleged disability onset date.

24             8.   The claimant has at least a high school education and is able to
                    communicate in English.
25

26             9.   Transferability of job skills is not material to the determination
                    of disability because using the Medical-Vocational Rules as a
                    framework supports a finding that the claimant is "not disabled,"
27                  whether or not the claimant has transferable job skills.

28             10. Considering the claimant's age, education, work experience,

                                           2

and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 29, 2010, through the date of this decision.

AR 28–33.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on August 1, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1–4.

FACTUAL BACKGROUND

Born on August 15, 1965, plaintiff was 44 years old on the alleged onset date of disability and 46 years old at the time of the administrative hearing.  AR 31, 121.  Plaintiff did not engage in substantial gainful activity during the period between March 29, 2010 and April 17, 2012.  AR 28.  Plaintiff worked as a well driller for approximately twenty years before being laid off in August 2009.  AR 57, 137.  In late March 2010, plaintiff fell as a result of sudden lower back pain.  AR 205.

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

1  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citing Batson v. Comm'r of Soc. Sec. Admin.,

2  359 F.3d 1190, 1193 (9th Cir. 2004)).

3       Although this court cannot substitute its discretion for that of the Commissioner, the court

4  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

5  evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and

6  Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

7  Cir. 1985).

8       "The ALJ is responsible for determining credibility, resolving conflicts in medical

9  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

10 (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

11 one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.

12 Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons

13 stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did

14 not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340

15 F.3d 871, 874 (9th Cir. 2003).

16      The Court will not reverse the Commissioner's decision if it is based on harmless error,

17 which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

18 ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

19 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see

20 also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

21                                        ANALYSIS

22      Plaintiff seeks summary judgment on the ground that the ALJ erred in his evaluation of

23 plaintiff's credibility.  ECF No. 12 at 5–11.  The Commissioner opposes, arguing that the ALJ's

24 decision is supported by substantial evidence and is free from legal error.  ECF No. 17.

25 A.    Relevant Background

26      On February 21, 2003, plaintiff was examined by Michael Simpson, a Family Nurse

27 Practitioner.  AR 247.  Nurse Simpson noted during the examination that plaintiff suffers from

28 chronic back pain and hypertension.  Id.  Plaintiff was prescribed Prinivil for hypertension.  Id.

                                             4

On March 5, 2010, plaintiff was examined by Dr. Bryce Conner.  AR 207.  The examination notes indicate that plaintiff complained of "more back pain with moist weather and pressure changes."  Id.  Dr. Conner's examination notes also indicate that plaintiff has stiffness in his mid and lower back, his motion is decreased and "there is mild paravertebral tenderness."  AR 208.  Plaintiff was prescribed Colchine and Norco for pain management.[2]  Id.

On March 29, 2010, a Disability Determination Services summary was prepared and indicates that plaintiff's back condition is both better and worse.  AR 233.

On April 15, 2010, plaintiff was examined again by Dr. Conner for complaints of worsening pain in his back and right leg.  AR 205.  The examination notes indicate that plaintiff fell the previous week due to sudden lumbar pain and wakes at night due to lumbar pain when he turns.  Id.  Dr. Conner noted that plaintiff's extension was good to neutral.  Id.  Dr. Conner referred plaintiff for radiological testing and further evaluation.  AR 206.  Dr. Conner did not prescribe any medication following this examination.  Id.  Dr. Conner also filled out a Work Recommendation Form for temporary total disability benefits, noting that plaintiff has low back pain, low back syndrome and Lumbalgia.  AR 248.  On April 17, 2010, plaintiff submitted a claim for employment disability insurance, explaining he has "bad pain 90% or more of the time."  AR 137.  The claim includes a Doctor's Certificate filled out by Dr. Conner.  AR 139.  The certificate indicates that plaintiff has "decreased motion of [his] back and [right] leg" and has been incapable of performing his regular or customary work.  Id.

On July 19, 2010, a Field Office Disability Report was prepared, noting that plaintiff had difficulty standing and walking, and "walked very stiffly and wore a[] worn out back brace."  AR 147.

Plaintiff was examined again by Dr. Conner on October 18, 2010.  AR 203.  Plaintiff complained of worsened low back pain and numbness in his right arm and hand.  Id.  Dr. Conner's examination notes indicate that he advised plaintiff to seek further evaluation.  AR 204.

---

[2]  Colchicine is used to prevent gout attacks and to relieve the pain of gout attacks when they occur.  Colchicine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/medlineplus.html (last updated February 1, 2010).  Norco contains acetaminophen and hydrocodone and is used to relieve moderate-to-severe pain.  Hydrocodone Combination Products, MedlinePlus (last updated October 15, 2014).

1    Dr. Conner prescribed Norco with three refills and Colchicine.  Id.

2        On December 16, 2010, plaintiff saw Dr. John Simmonds for an orthopaedic consultation.

3    AR 216–20.  The examination included a physical examination and observation of plaintiff's

4    "movements in the examination room and ability to get on and off the examination table."  AR

5    217.  The examination notes indicate that plaintiff had no history of surgery and he was taking

6    Colchicine as needed and 2-3 Hydrocodone per day.  Id.  Dr. Simmonds noted that plaintiff did

7    not appear to be in acute or chronic distress and he was able to move about the office freely.  AR

8    218.  Dr. Simmonds also noted that plaintiff "has a painful range of motion of the neck and lower

9    back with pain along the paravertebral muscular groups" and "a painful range of motion of the

10    right knee accompanied with crepitus."  AR 219.  Dr. Simmonds further noted that plaintiff had

11    "pain along the medial and lateral joint lines."  Id.  Dr. Simmonds opined that plaintiff could

12    push, pull, lift and carry fifty pounds occasionally and twenty-five pounds frequently, walking

13    and standing could be done for six hours per day, and no assistive device is required for

14    ambulation.  Id.

15        On January 7, 2011, Dr. M. Acinas, a non-examining physician, prepared a Case Analysis

16    Form indicating that plaintiff was partially credible.  AR 226–27.  Noting that there were "[v]ery

17    little" medical records for review, Dr. Acinas supported the credibility finding by stating that

18    plaintiff's "allegations are not fully supported by objective evidence."  AR 227.

19        On January 31, 2011, a Field Office Disability Report was prepared, noting that plaintiff

20    had difficulty standing, walking, using his hands and writing.  AR 150.  The report also noted that

21    plaintiff "walked very slowly with one crutch and his body at a very severe angle.  He held his

22    arm bent at the elbow with his hand near his chin.  His right hand was [bandaged] up and he was

23    unable to use it at all, when he was unfolding a paper from his bag he had to use his teeth."  Id.

24    On February 7, 2011, plaintiff submitted a letter describing his physical ailments, which included

25    neck pain and severe stiffness, unexpectedly dropping things from his hands and less throttle

26    control and feeling his right foot when he is able to drive.  AR 125.

27        On May 24, 2011, plaintiff's step-mother submitted a statement describing plaintiff's

28    condition as "debilitating" and noting he has difficulty bending and performing other physical

1   tasks.  AR 160–61.  Plaintiff's stepson and his stepson's girlfriend also submitted statements

2   describing plaintiff's condition as extremely painful and noting he cannot move from his bed at

3   times.  AR 162–65.

4          On June 20, 2011, plaintiff was examined by Dr. Albert G. Lui.  AR 244–45.  Dr. Lui

5   noted that plaintiff is a "self-healer" and is "still walking with crutches at times[,] better on and

6   off, but in general worse."  AR 244.  Dr. Lui's notes indicate that plaintiff was taking

7   Hydrocodone and Colchicine at the time of the examination.  Id.  The examination summary

8   indicates that plaintiff has a history of, *inter alia*, hypertension, a broken back, a dislocated right

9   leg and multiple accidents.  Id.  Dr. Lui also noted that plaintiff was seeing Dr. Conner but he

10  stopped approximately eight months earlier when Dr. Conner relocated to the Bay Area.  Id.

11  With regard to plaintiff's gout treatment, Dr. Lui prescribed Colchicine, natural handouts were

12  given to plaintiff and he was encouraged to drink water.  AR 245.

13         On December 23, 2011, plaintiff was examined by Dr. Gregory White.  AR 284  Dr.

14  White noted that plaintiff had been seen by Dr. Conner for years and was treated with Norco

15  however this ended when Dr. Conner moved and the Shingletown clinic "refuse[d] to dispense

16  pain medications."  Id.  Dr. White further noted that plaintiff had not been to radiology "to

17  confirm the nature and severity" of his symptoms.  Id.  Dr. White's physical examination notes

18  indicate that plaintiff required "a cane for all ambulation with much difficulty and pain in the

19  standing position."  Id.  Dr. White further noted that plaintiff "has been doing well without any

20  changes in condition or pain severity.  There has been no weight gain [or] loss, fevers, chills and

21  loss of appetite or sleeping difficulties."  Id.  Dr. White's assessment of plaintiff's conditions

22  included: chronic neck pain with reduced range of motion, chronic back pain, degenerative joint

23  disease, right knee with the fusion, a history of gouty arthritis and a history of hypertension.  AR

24  285.  Dr. White prescribed Norco, noting that plaintiff's refusal to do paperwork had thwarted

25  attempts to take x-rays and he could not be treated with opiates any longer.  Id.

26         On January 12, 2012, plaintiff had several x-rays taken to assess his condition.  AR 252–

27  54.  Noting a history of chronic pain, the x-ray results indicate that plaintiff suffers from

28  degenerative disc disease and facet hypertrophy and Pellegrini-Stieda disease.  Id.

On February 29, 2012, plaintiff was examined again by Dr. Lui.  AR 255–57.  Dr. Lui's examination notes indicate that plaintiff was homeless, needed help with paperwork and could not afford a follow-up appointment with Dr. White.  AR 255.  The examination notes indicate that plaintiff was not taking any medications at that time.  Id.  Dr. Lui further noted that plaintiff was limping, in pain, could not sit for the reflex check and was supported by standing on crutches.  AR 256.  Dr. Lui prescribed Colchicine for plaintiff's gout symptoms, natural handouts were given to plaintiff and he was encouraged to drink water.  Id.  With regard to plaintiff's hypertension, Dr. Lui's notes indicate that plaintiff was in pain and needed a prescription, but it does not appear a prescription was ordered by Dr. Lui.  Id.

During the March 9, 2012 hearing, plaintiff testified that he injured his back when he fell over a gate in his front yard several months after he was laid off.  AR 57.  Plaintiff testified that he has been "dealing with back pain for a long time" and if he takes a wrong step "it just really hurts" and "paralyzes" him.  Id.  Plaintiff testified that he was examined by Dr. Conner approximately a week and a half after his accident.  AR 58.  Plaintiff testified that he suffers from broken wrists and gout and is in constant pain.  AR 63.  Plaintiff testified that he cannot afford medication prescribed by his doctor despite the recommendation that he take it to control his pain.  Id.  Plaintiff stated that his legs were numb and he has "ropes hanging from [his] ceiling so [he] can get out of bed."  AR 64.  The ALJ questioned plaintiff regarding the limited number of times he visited a doctor in 2010.  Plaintiff responded that he does not go to doctors "like normal people" and he is just not the kind of person who goes to doctors.  AR 65; see also AR 173 (statement by plaintiff explaining that he does "not believe in Doctors much and cannot afford their cost, and [has] healed [him]self all these years").

On May 1, 2012, plaintiff was examined by Dr. Jamie J. Smith, a chiropractor.  AR 279–80.  Dr. Smith noted that plaintiff complained of lower back pain and contractible spasms.  AR 279.  The examination revealed that plaintiff's condition was consistent with his diagnosis.  Id.  Dr. Smith referred plaintiff for prescription medications, noting that he suffers from severe degenerative disc disease with neurological deficits to the right lower extremities.  AR 280.

On April 10, 2013, Dr. Lui prepared a Physical Residual Functional Capacity

8

Questionnaire.  AR 291–95.  The evaluation indicates that plaintiff is diagnosed with, among other things, gout, chronic pain and hypertension.  AR 291.  The evaluation indicates that plaintiff is not a malingerer and plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation.  AR 292.  The evaluation also indicates that plaintiff constantly experiences pain or other symptoms that are severe enough to interfere with attention and concentration.  Id.

B.      The ALJ's Decision

As noted, the ALJ's April 17, 2012 decision found, in part, that plaintiff has the residual functional capacity to perform medium work with the exclusion of: frequent climbing of ramps and stairs, occasional climbing of ladders, ropes and scaffolds, frequent balancing and occasional stooping, kneeling crouching and crawling and plaintiff must avoid concentrated exposure working at heights and moving machinery.  AR 29.  The ALJ provided the following explanation in support of this finding:

> The undersigned has considered all the evidence and testimony of record, as well as third party statements.  The claimant testified and the third party report state [sic] that he has severe pain that limited his ability to sit, stand, bend, and lift.  The claimant's allegations are somewhat credible, but not to the degree that they would prevent work within the parameters of the limitation in the established residual functional capacity.
>
> In support of this conclusion, it is noted that the objective findings have been minimal in this case.  There is no evidence of motor dysfunction, strength loss or severe sensation loss.  The claimant's gait is normal and neurological findings were intact.  He has had minimal conservative treatment.   In fact, he has gone for long periods with no treatment.
>
> . . . .
>
> The claimant's allegations regarding disabling pain are given little weight because they are inconsistent with the treatment records as explained above.  Although the claimant may have some pain and fatigue, the record does not show that he has any prolonged period of incapacitation as alleged.

AR 30–31.

C.      Legal Standards Regarding Credibility

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts

9

1  in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the

2  medical evidence in the record is not conclusive, "questions of credibility and resolution of

3  conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.

4  1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan, 169 F.3d at 601.

5       "In assessing the credibility of a claimant's testimony regarding subjective pain or the

6  intensity of symptoms, the ALJ engages in a two-step analysis."  Molina v. Astrue, 674 F.3d

7  1104, 1112 (9th Cir. 2012) (citing Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)); see also

8  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "First, the ALJ must determine

9  whether the claimant has presented objective medical evidence of an underlying impairment

10  which could reasonably be expected to produce the pain or other symptoms alleged."  Vasquez,

11  572 F.3d at 591.  Second, "[i]f the claimant meets the first test and there is no evidence of

12  malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms

13  if she gives 'specific, clear and convincing reasons' for the rejection."  Id. (quoting Lingenfelter,

14  504 F.3d at 1036).  "General findings are insufficient; rather, the ALJ must identify what

15  testimony is not credible and what evidence undermines the claimant's complaints."  Lester v.

16  Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.

17  1993).  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

18  credibility evaluation" such as reputation for lying, prior inconsistent statements concerning

19  symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273,

20  1284 (9th Cir. 1996).  The ALJ may also consider a claimant's work record and observations by

21  physicians and other third parties regarding the nature, onset, duration and frequency of

22  symptoms.  Id.  While a "lack of medical evidence cannot form the sole basis for discounting pain

23  testimony, it is a factor that that ALJ can consider on his credibility analysis."  Burch, 400 F.3d at

24  681.

25       The Ninth Circuit has found that the claimant is not required to show that his impairment

26  could be expected to cause the severity of the pain he claims, but only that it could cause some

27  degree of pain.  Lingenfelter, 504 F.3d at 1036 (finding that "the ALJ may not reject subjective

28  symptom testimony . . . simply because there is no showing that the impairment can reasonably

1   produce the degree of symptom alleged"); Smolen, 80 F.3d at 1282 (finding claimant must be

2   able to show that the impairment "could reasonably be expected to (not that it in fact did) produce

3   some degree of symptom"); Bunnell v. Sullivan, 947 F.2d 341, 346–47 (9th Cir. 1991) (en banc)

4   (concluding that the "adjudicator may not discredit a claimant's testimony of pain and deny

5   disability benefits solely because the degree of pain alleged by the claimant is not supported by

6   objective medical evidence").

7   D.   Analysis

8       The ALJ offered three reasons in support of a finding that plaintiff's statements

9   concerning the intensity, persistence and limiting effects of his symptoms are only somewhat

10  credible: (1) there have been minimal objective findings in plaintiff's case; (2) plaintiff has had

11  minimal conservative treatment; and (3) there is no evidence of motor dysfunction, strength loss

12  or severe sensation loss.  AR 30–31.  Each finding will be discussed in turn.

13      1.   Minimal Objective Findings

14      The ALJ first noted that there is little objective evidence to support plaintiff's testimony

15  that the pain he experiences prevents him from working.  The ALJ found that plaintiff's

16  impairments could reasonably be expected to cause his symptoms, AR 29, but found plaintiff's

17  testimony regarding the severity of his symptoms somewhat credible because objective findings

18  have been minimal, AR 31.

19      Here, the ALJ's finding that plaintiff is not entirely credible concerning the degree of his

20  impairments and limitations is supported by substantial evidence.  In assessing plaintiff's

21  credibility, the ALJ noted that while plaintiff "may have some pain and fatigue, the record does

22  not show that he has any prolonged period of incapacitation as alleged."  AR 31.  Plaintiff's

23  medical treatment records show that plaintiff's symptoms included mild back pain such as

24  stiffness in his mid and lower back with "mild paravertebral tenderness," AR 208, 279, and pain

25  while standing, AR 284.  Plaintiff's medical records also show that while plaintiff was at times

26  experiencing acute or chronic distress, he was able to move about freely.  AR 218; see also AR

27  244 (plaintiff walking with crutches "at times").  The court concludes that the ALJ did not err in

28  finding that there is minimal medical evidence in the record supporting plaintiff's testimony

1    regarding the severity and duration of his pain.  Although plaintiff disagrees with the ALJ's

2    finding, the ALJ's credibility determination based on minimal objective findings was sufficiently

3    specific to permit the court to conclude that the ALJ did not arbitrarily discredit his testimony.

4    Thomas, 278 F.3d at 958 (citing Bunnell, 947 F.2d at 345–46).  If, as in this case, "the ALJ's

5    credibility finding is supported by substantial evidence in the record, we may not engage in

6    second-guessing."  Thomas, 278 F.3d at 959 (citing Morgan, 169 F.3d at 606); see also Batson,

7    359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's

8    decision, we may not substitute our judgment for that of the ALJ." (citing Tackett, 180 F.3d at

9    1098)).

10          Further, while an ALJ may not use this justification as the sole basis for discrediting a

11   claimant's testimony, Reddick, 157 F.3d at 722, the Ninth Circuit has explained that an ALJ may

12   rely on the lack of objective findings in conjunction with other factors in rejecting testimony.

13   Burch, 400 F.3d at 681.  In this case, the ALJ proffered three separate reasons for rejecting

14   plaintiff's testimony regarding the severity of his symptoms, thus the minimal objective findings

15   in the record was a properly considered factor in assessing plaintiff's credibility.  Id.; see also

16   Bunnell, 947 F.2d at 345 (ALJ may consider a lack of objective medical evidence to corroborate

17   claimant's subjective symptoms so long as it is not the only reason for discounting claimant's

18   credibility); Rollins v. Massanari, 261 F.3d at 857 (objective medical evidence may not be sole

19   reason for discounting credibility but is nonetheless a legitimate and relevant factor to be

20   considered in assessing credibility).

21          The ALJ accordingly did not err in considering the lack of objective medical evidence as

22   one factor in finding plaintiff not entirely credible.

23          2.     Minimal Conservative Treatment

24          The ALJ next referenced the minimal conservative treatment provided for plaintiff as a

25   reason for finding plaintiff not entirely credible.  The ALJ noted, among other things, that

26   plaintiff's medical records show that he had several examinations within normal limits and had a

27   negative axial compression test and a negative Spurling's sign.  AR 31.  The ALJ also observed

28   that plaintiff did not require an assistive device for ambulation during several examinations and

1    has gone for long periods with no treatment.  AR 31–32.

2            A conservative treatment history and failure to seek medical treatment are legitimate bases

3    for an ALJ to discount a claimant's credibility.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039

4    (9th Cir. 2008); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding that the

5    claimant's allegations of persistent, severe pain and discomfort were belied by "minimal

6    conservative treatment").

7            Here, the ALJ did not err in relying on the minimal conservative treatment in the record as

8    a basis for finding plaintiff less than credible.  The record shows that plaintiff did not require

9    surgery or other invasive procedures for his pain management.  On the contrary, plaintiff's

10   treatment between 2010 and 2012 consisted of pain medication in combination with "natural

11   handouts" and a recommendation to drink water.  See, e.g., AR 254 ("natural handouts" provided

12   to plaintiff and he was advised to drink water); AR 256 (same).  Plaintiff's treatment records

13   indicate that he was taking the medication Colchicine to manage his gout and Norco for pain

14   management.  However, while plaintiff was prescribed Norco to manage his pain, his

15   prescriptions were sporadic and at times his treating physicians did not prescribe this particular

16   pain medication following an examination.  See, e.g., AR 205–06 (no pain medication prescribed

17   during plaintiff's April 15, 2010 examination by Dr. Conner); AR 245 (plaintiff was prescribed

18   Colchicine during his June 20, 2011 examination by Dr. Lui with no prescription for Norco); AR

19   255–56 (plaintiff was not taking any medication during his February 29, 2012 examination and

20   was not prescribed any pain medication following the examination).  Further, the fact that

21   plaintiff did not seek out more aggressive treatment beyond pain medications "is powerful

22   evidence regarding the extent to which [he] was in pain."  Burch, 400 F.3d at 681.  The court

23   concludes that the ALJ's findings are supported by substantial evidence.  See Parra v. Astrue, 481

24   F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a

25   claimant's testimony regarding severity of an impairment." (citation omitted)).

26           With regard to plaintiff's argument that his failure to seek more aggressive treatment was

27   due to financial hardship, ECF No. 12 at 9, this argument is not persuasive.  "[A]n unexplained,

28   or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . .

1  can cast doubt on the sincerity of [a] claimant's pain testimony." Fair, 885 F.2d at 603.

2  However, when a claimant does not seek medical treatment, the ALJ may not reject symptom

3  testimony where the claimant provides "evidence of a good reason for not [seeking treatment]."

4  Smolen, 80 F.3d at 1284 (citing Bunnell, 947 F.2d at 346; Fair, 885 F.2d at 602).  Where a

5  claimant suffers from financial hardships, a failure to obtain treatment is not a sufficient reason to

6  deny benefits.  See Gamble v. Chater, 68 F.3d 319, 320–22 (9th Cir. 1995) ("'It flies in the face

7  of the patent purposes of the Social Security Act to deny benefits to someone because he is too

8  poor to obtain medical treatment that may help him.'" (quoting Gordon v. Schweiker, 725 F.2d

9  231, 237 (4th Cir. 1984))); See also Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d

10  1294, 1297 (9th Cir. 1999) (failure to follow treatment plan is not a legitimate reason for rejecting

11  a claimant's pain testimony when the failure is due to lack of resources).

12       Here, while plaintiff testified that he is not able to afford regular medical treatment or

13  medications prescribed by physicians because he suffers from financial hardship, the fact that

14  plaintiff sought and received medical treatment and medications on several occasions, including

15  in February 2012 when he was purportedly homeless, undercuts plaintiff's testimony.  See, e.g.,

16  AR 255–57 (Dr. Lui's treatment notes indicating that plaintiff is homeless and providing an

17  assessment and plan for plaintiff's treatment).  Moreover, the references to plaintiff as a "self-

18  healer" suggest that plaintiff made the decision to forgo medical treatment, not that he was unable

19  to obtain treatment because of a financial hardship.  See, e.g., AR 65 (plaintiff's testimony that he

20  is not someone who goes to doctors); AR 166 (plaintiff explaining that he has been injured many

21  times but "sucked it up and never used insurance or went to the" doctor); AR 173 (plaintiff

22  explaining he declined medical treatment because he does not believe in doctors, cannot afford

23  the cost and has "healed [him]self all these years"); AR 244–45 (Dr. Lui's treatment notes

24  describing plaintiff as a "self-healer"); AR 284–85 (Dr. White's treatment notes stating that

25  plaintiff has not been to radiology "to confirm the nature and severity of [his] problems" and his

26  refusal to do paperwork has thwarted treatment attempts).

27       Thus, the ALJ did not err in finding plaintiff not entirely credible on the ground that he

28  received only minimal conservative treatment.

3.     No Evidence of Motor Dysfunction, Strength Loss or Severe Sensation Loss

Finally, the ALJ referenced a lack of evidence of symptoms as a basis for finding plaintiff somewhat credible. AR 31.  The ALJ's decision found that plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, Pellegrini-Stieda disease of the right knee and gout.  AR 28.  With regard to the two-step analysis set forth in Lingenfelter, 504 F.3d at 1036, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." AR 29.  After summarizing most of plaintiff's medical treatment records, the ALJ's decision found that plaintiff's allegations are somewhat credible, relying in part on a lack of evidence in the record of motor dysfunction, strength loss or severe sensation loss.  AR 31.

Here, the ALJ did not "specifically identify the testimony she or he finds not to be credible [or] explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  Moreover, the ALJ's decision ignores portions of plaintiff's medical treatment records that support a finding that plaintiff suffered various symptoms including strength loss, see AR 205 (plaintiff has worsening back pain, right leg pain and weakness), AR 244 (plaintiff is walking with crutches), and severe sensation loss, see AR 203 (plaintiff has numbness in right arm and hand).  Thus, this reason for rejecting plaintiff's subjective complaints is not convincing.

Regardless, when there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008); Stout, 454 F.3d at 1055; Batson, 359 F.3d at 1195–97.  In this case, in light of the remaining lawful reasons stated by the ALJ for rejecting plaintiff's testimony, any error the ALJ may have committed in in this regard is harmless.  Batson, 359 F.3d at 1197 (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990))).

1                                    CONCLUSION

2          For these reasons, the court finds that the ALJ has provided specific, legitimate reasons

3   for finding plaintiff's testimony regarding the severity of his symptoms not entirely credible.

4   Because the ALJ's disability determination is supported by substantial evidence, it is not

5   erroneous.

6          Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

7          1.      Plaintiff's motion for summary judgment, ECF No. 12, is denied; and

8          2.      The Clerk of the Court is directed to enter judgment in the Commissioner's favor.

9   DATED: December 16, 2014

10

11                                                ALLISON CLAIRE
                                                  UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28